STANDARD PIPE LINE COMPANY *v.* INDEX-SULPHUR DRAINAGE DISTRICT.

Opinion delivered March 28, 1927.

1. DRAINS—ASSESSMENT OF PIPE LINE.—The right-of-way of a pipe line company is subject to assessment as real property for preliminary expenses of a drainage district, as provided by the Index-Sulphur Drainage District Act, approved February 4, 1920.

2. HIGHWAYS—ASSESSMENT OF PIPE LINE.—The right-of-way of a pipe line company is subject to assessment as real property for preliminary expenses of a highway district, as provided by the South Miller County Highway District Act, approved February 4, 1920.

3. COMMERCE—ASSESSMENTS FOR LOCAL IMPROVEMENTS.—Special assessments on a pipe line used in interstate commerce for the construction of drainage and highway districts *held* not a tax which is forbidden by the interstate commerce clause of the Constitution of the United States.

4. DRAINS—HIGHWAYS—ASSESSMENT FOR PRELIMINARY EXPENSES.—
Levy of a special assessment to pay the preliminary expenses of
drainage and highway districts *held* not arbitrary because levied
on the assessed valuation of property for State and county pur-
poses, since this method does not imply that it is not also accord-
ing to benefits to be derived from the two improvements.

5. DRAINS — HIGHWAYS — IMPROVEMENT TAX — BENEFIT.— In the
absence of flagrant abuse or purely arbitrary action by the Legis-
lature, it may establish drainage and road districts and tax lands
therein for local improvement, and lands will nòt escape liability
solely because they will not receive direct benefits.

6. DRAINS—HIGHWAYS—SPECIAL ASSESSMENT ON PIPE LINE—
VALIDITY.—Assessments on a pipe line for preliminary expenses of
a drainage district and of a highway district provided by special
acts of the Legislature *held,* under the evidence, not to be arbi-
trary or an unreasonable exercise of the legislative taxing power.

7. DRAINS—HIGHWAYS—VALIDITY OF ASSESSMENT OF PIPE LINE.—
Where a property owner had not made complaint in the manner
provided by law that the assessment of its property for State
and county purposes was discriminatory, it could not complain
on that account when such assessment was used as the basis.
for a special assessment to pay the preliminary expenses of drain-
age and highway districts.

Appeal from Miller Chancery Court; *C. E. Johnson,*
Chancellor; affirmed.

STATEMENT OF FACTS.

Index-Sulphur Drainage District and South Miller
County Highway District brought separate suits in the
chancery court against Standard Pipe Line Company,
Inc., to recover the amount of special improvement taxes
against said company for the payment of preliminary
expenses in winding up the affairs of said improvement
districts. The suit in each case was defended on the
ground that the assessment of benefits was arbitrary and
discriminatory and, in any event, that the defendant com-
pany was not in any sense benefited by said improve-
ments. The cases were consolidated for the purposes of
trial.

The record in the case is very voluminous, but a brief
statement of facts will suffice to indicate what issues of
law are involved in the appeal.

Index-Sulphur Drainage District was created by a special act of the Legislature, approved February 4, 1920. It was ascertained by the commissioners that the cost of the improvement would exceed the benefits to the real property situated in the district, and they recommended that further proceedings be discontinued and the affairs of the district should be wound up. The Legislature of 1923 passed an act to repeal Index-Sulphur Drainage District of Miller County, Arkansas, and provided that the affairs of the district be wound up by the commissioners and its legal indebtedness paid. Special Acts of 1923, p. 282. Section 9 of the repealing act provides that the commissioners of the district should levy upon the real estate within the district a tax sufficient to pay the indebtedness of the district, and that said tax should be levied upon the real estate, using the assessment for State and county purposes as assessed and fixed for the year 1923. The section further provides that the commissioners should declare the per cent. to be levied annually on said assessment for State and county purposes for the year 1923 that would be required to pay off the outstanding indebtedness of the district. The section also provides that, if the commissioners deem it to the best interest of the property owners, the taxes may be spread over four annual installments. Pursuant to the authority given by this act, the commissioners levied a tax upon the real property in the district of 1.6 per cent. of the assessed value of the real property of the district, including said company's pipe line, as fixed by the Arkansas Railroad Commission under the provisions of our statute authorizing it to assess the property of pipe-line companies in the State of Arkansas. The amount of said tax or special assessment for the year levied was $457.23, and for the four annual installments the aggregate amount which would be paid by said pipe-line company would be $1,828.92. The act creating the district provided that the property of railroad, telegraph, telephone and pipe-line companies situated within the district should be classed as real estate and an assessment of benefits be

levied against such property as was done upon other real estate. The Standard Pipe Line Company, Inc., had its pipe line in said improvement district, and it extended into the State of Louisiana. It was engaged in piping oil from the State of Arkansas into the State of Louisiana. Other facts with reference to this case will be stated in the opinion.

South Miller County Highway District was created by special act, approved February 4, 1920, and was repealed by special act of the Legislature, approved February 9, 1923. Special Acts of 1923, p. 126. It was ascertained by the commissioners that the cost of the improvement would greatly exceed the benefits to the real property, and, for that reason, the construction of the improvement was abandoned. For a more particular statement of the acts of the commissioners in winding up the affairs of the district and determining its indebtedness see *Meek* v. *Christian,* 168 Ark. 313, 270 S. W. 614. The original act creating the district provided that railroad, telegraph, telephone and pipe-line companies situated in the district should be classified as real estate and that their property should be assessed as other real estate for the construction of the improvement. The act creating the district also provided that if, for any cause, the improvement was not constructed, the preliminary expenses should be paid by the commissioners, and they were directed to determine the percentage to be levied annually on the assessment for county and State purposes for the year 1923, and that the amount of taxes should be spread over four annual installments. A rate of 1.6 per cent. was levied against the assessed value of the lands, railroads, pipe lines, etc., using the assessment for State and county purposes for the year 1923 as a basis for assessing said property. The amount assessed against the Standard Pipe Line Company, Inc., was $1,655, which was the amount due under the plan of assessment provided to be made for the payment of preliminary expenses as above set forth. Other facts will be stated in the opinion.

The court found the issues in favor of the plaintiffs, and a decree was entered of record declaring that the amount assessed in support of each improvement district against the Standard Pipe Line Company, Inc., was a lien on the right-of-way and pipe line within said district, and provided for the collection of the same by sale of the property assessed. The consolidated case is here on appeal.

*T. M. Milling, W. H. Arnold, W. H. Arnold, Jr.,* and *David C. Arnold,* for appellant.

*Henry Moore, Jr.,* and *T. B. Vance,* for appellee.

HART, C. J., (after stating the facts). It is first contended by counsel for the defendant that its pipe line is not real estate and could not be classified as such by the Legislature in the acts creating said improvement districts. There is a conflict in the adjudicated cases as to whether or not the right-of-way of a railroad company or of a telegraph company is subject to local assessments, but this court has held that the right-of-way of a railroad corporation or of a telegraph company is subject to local assessment as real property. *Missouri Pac. Rd. Co.* v. *Conway County Bridge Dist.,* 142 Ark. 1, 218 S. W. 189; and *Western Union Tel. Co.* v. *Road Imp. Dist. No. 1,* 144 Ark. 476, 222 S. W. 717. Such holding is in accord with the weight of modern authority on the question. The reason is that the railroad or telegraph company has an easement in its right-of-way which is permanent in its nature and which may be specially benefited by drainage or road improvements. It is not like the case of allowing streetcar companies, gas and water companies to use the streets of a city under legislative authority. In all such cases the Legislature merely gives such public service corporations the use of the streets, and they acquire no permanent easement in them; while, in the case of railroad or telegraph companies, they have the exclusive right to use their rights-of-way for the purposes for which such corporations are organized, and such uses carry with is an interest in the ground which is in the nature of real property and is the subject of a special assessment as such. *North-*

*ern Pacific Ry. Co.* v. *Richland County,* 28 N. Dak. 172, 148 N. W. 545, Ann. Cas. 1919E, p. 574, and case-note; and L. R. A. 1915A, p. 129, and case-note.

By analogy the right-of-way and pipe line of the defendant was subject to assessment for the preliminary expenses of each improvement district the same as the other real property in the district.

It is next insisted that the pipe line of the defendant extends from the State of Arkansas into the State of Louisiana, and that it is wholly engaged in interstate commerce, and that to levy a special assessment upon its pipe line for a drainage district or road improvement district would be in violation of the Constitution of the United States, which prohibits the State from laying a tax on interstate commerce in any form. We do not think that a special assessment of real property to construct a local improvement is a tax which is forbidden by what is commonly called the interstate commerce clause of the Constitution of the United States. *Northern Pacific Ry. Co.* v. *Richland County,* 28 N. D. 172, Ann. Cas. 1916E, and cases cited on page 579. This is the effect of numerous cases heretofore decided by this court relating to road improvement districts, which have been affirmed by the Supreme Court of the United States. Indeed, this is the view of the matter taken by the Supreme Court of the United States in the earlier case of *Illinois Central Rd. Co.* v. *Decatur,* 147 U. S. 190, 13 S. Ct. 293, where it was held that an exemption from taxation is to be taken as an exemption from the burden of ordinary taxes, and does not relieve from the obligation to pay special assessments, imposed to pay the cost of local improvements, and charged upon contiguous property upon the theory that it is benefited thereby. In discussing the subject it was said:

"And whether the charges are called special taxes or special assessments, and by whatever tribunal or by whatever mode the question of benefits may be determined, the fact remains that the charges are for a local improvement, and cast upon the contiguous property, upon the

assumption that it has received a benefit from such
improvement, which benefit justifies the charge. The
charges here are not taxes proper, are not contribu-
tions to the State or to the city for the purpose of ena-
bling either to carry on its general administration of
affairs, but are a charge only and specially for the cost
for a local improvement, supposed to have resulted in an
enhancement of the value of the railroad company's prop-
erty.''

Moreover, there is a distinction between a tax upon
property which is used in interstate commerce which is
valid, and a tax upon the act of interstate commerce which
is not. *Cleveland, etc., R. Co.* v. *Backus,* 154 U. S. 439, 14
S. Ct. 1122, and *Adams Express Co.* v. *Ohio State Auditor,*
165 U. S. 194, 17 S. Ct. 305.

It is next insisted that the levy of the special assess-
ment is arbitrary because it is levied upon a percentage
of the assessed valuation of the property for State and
county purposes. We cannot agree with counsel in this
contention. The Legislature provided that the prelim-
inary expenses in each case, in the case of the abandon-
ment of the project, should be paid by a special assess-
ment based upon a percentage of the value of the real
property in the district for State and county purposes as
shown by the assessment roll for 1923. This constituted
a legislative determination of the justice of this method
of assessing benefits, and such legislation has been
expressly upheld by this court as a proper exercise of
legislative power. *Missouri Pacific Rd. Co.* v. *Sears,* 166
Ark. 104, 265 S. W. 653. The court expressly held in this
and other cases that the fact that the special assessment is
made upon the whole value of the property as assessed for
State and county purposes does not imply that it is not
also according to the benefits to be derived from the
improvements. Hence it is not an arbitrary method of
ascertaining the amount of benefits to assume that they
will accrue in proportion to the actual value of the whole
property. In *Western Crawford Road Imp. Dist.* v. *Mis-
souri Pacific Rd. Co.,* 157 Ark. 304, 248 S. W. 563, it was

held that a legislative determination that the preliminary expenses of an abandoned highway improvement levied on the basis of the assessed value of the property in the district for State and county purposes would not exceed the anticipated benefits from the construction of the improvement, is conclusive unless shown on its face to be arbitrary and unreasonable. This case was carried to the Supreme Court of the United States, and it was there held that, where a special road improvement is abandoned, after preliminary publication and inquiry, because the cost would probably exceed the benefits to the land included in the improvement district, the State may defray the expenses of the inquiry by assessing the lands according to their value as assessed for purposes of State and county taxation. *Missouri Pacific Rd. Co.* v. *West Crawford Rd. Imp. Dist.*, 266 U. S. 187, 45 S. Ct. 31. It was there said that it is only against a flagrant abuse or purely arbritrary exercise of the taxing power that the Constitution of the United States affords protection. Again, the Supreme Court of the United States has reaffirmed the rule that it is only where the legislative determination is palpably arbitrary, and therefore an abuse of the taxing power, that it can be said to offend the due process of law clause of the Fourteenth Amendment. *Kansas City So. Ry. Co.* v. *Rd. Imp. Dist. No. 3 of Sevier County*, 266 U. S. 379, 45 S. Ct. 136.

It is now well settled by the decisions of our own court above cited and many others which might be cited, and by the decisions of the Supreme Court of the United States, that, in the absence of flagrant abuse or purely arbitrary action on the part of the State Legislature, it may establish drainage and road districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits. *Houck* v. *Little River Drainage District*, 239 U. S. 254, 36 S. Ct. 58; *Miller & Lux, Inc.*, v. *Sacramento & San Joaquin Drainage Dist.*, 256 U. S. 129, 41 S. Ct. 404; and *Valley Farms Co. of Yonkers* v. *County of Westchester*, 261 U. S. 155, 43 S. Ct. 261.

Tested by these settled principles of law, it cannot be said that the action of the Legislature in fixing the levy for the payment of the preliminary expenses of each district at a certain per cent. of the assessed value of the real property of the district was palpably arbitrary and an abuse of the taxing power. It is true that, according to the evidence of the defendant company, it could not receive any benefit from either the drainage district or the road district. According to the testimony of the witnesses for it, it was wholly engaged in the business of carrying oil in its pipes from the State of Arkansas into the State of Louisiana. Its pipes were laid under the ground, and had a life of about twenty years. They were not affected by the water standing on the ground, and the telegraph line operated by the company was merely used as an aid of its pipe-line business, and was not in any sense benefited by the proposed road or drainage system. It may be said that a decided preponderance of the evidence establishes this view; but, under the principles of law decided in the cases above referred to, this does not end the matter; for it does not show that the legislative action was palpably arbitrary. According to the evidence of the plaintiffs, the drainage system would drain the water off of the right-of-way of the defendant company, and this would enable its employees to enter upon its land and more easily dig down to its pipe lines when it was necessary to replace or to repair them. Then, too, it would better enable the company to repair its telegraph line when the water had been drained off of its right-of-way. Under the charter of the company, it had a right to lay additional pipe lines and to operate its telegraph line as a telegraph line when in the future it was deemed necessary or expedient to do so. As we have already seen, it was not necessary that the special benefits should be direct and immediate. The Legislature, in an investigation of the matter, would have had a right to accept the testimony of the plaintiff as true and to have ascertained as a fact that the construction of the drainage system, by draining the right-of-way of the defendant, would

result in special benefits to its real property along the lines indicated. In addition, it may be said that, in case of a break in the pipe line, it would be necessary to repair this quickly in order to prevent a great wastage of oil, and this could be more easily and readily done if the water was drained off of the right-of-way along which the pipe lines were laid.

For the same reason it may be said that the construction of the proposed highway would result in a special benefit to the pipe line of the defendant. In case a discovery of oil should make it expedient or necessary to lay new pipe lines, an improved highway would be of great benefit in distributing the material along the right-of-way for the purpose of laying additional pipe lines. Then, too, it would be beneficial in cases of ordinary repairs of the pipe line and of the telegraph line. Hence we are of the opinion that the legislative determination that the preliminary expenses should be paid by a per cent. of the assessed valuation of the real property in the district for State and county purposes for the year 1923 was not palpably arbitrary and therefore an unreasonable exercise of the legislative taxing power.

Finally, it is insisted that the assessment is discriminatory because it makes the pipe-line company pay an undue proportion of the special assessments levied to pay the preliminary expenses. Now, under our statute, pipeline companies have the power of eminent domain and various other privileges, and the uses for which such companies are organized necessarily make them subject to the unit system of taxation. They are classified for the purposes of taxation, and a special board is given the power to assess them when other real property is assessed by the local taxing authorities of the various counties. No complaint was made by the company when its property was assessed for taxation in 1923 by the Arkansas Railroad Commission, whose duty it was to assess its property. If the company thought that its property was being discriminated against in the assessment made at that time, it should have made complaint in the manner

provided by law. Not having done so, it must be assumed that it considered the assessment of its property for State and county purposes to be just and reasonable and that it was not in any manner discriminatory when compared with the assessment made on other real property by the county assessors. In *Valley Farms Co.* v. *Westchester,* 261 U. S. 155, 43 S. Ct. 261, it was held that, where the State law gives a property owner an opportunity to be heard upon the valuation of his property for general taxation, he is not entitled, under the Fourteenth Amendment to the Constitution of the United States, to a further hearing on that subject when such valuations are used as bases for apportioning special assessments.

The result of our views is that the decision of the chancery court, holding that the assessment of benefits against the pipe line of the defendant was not palpably arbitrary and a plain abuse of legislative taxing power, was correct, and its decree is therefore affirmed.